Thank you for the first case of the afternoon. Based on the 315-0522, the people of the state of Illinois have the lead by Thomas Varela versus Aaron Evans, appellant by Stephen Varela. Mr. Varela, you may proceed. Good afternoon, Your Honors. Counsel. I'm Steve Varela with the Office of the State Appellate Defender, 3rd District for the defendant appellant, Aaron Evans. I'm here to police the court. I've raised three issues in the briefs in this case. First, that my client was denied a fair trial due to prosecutorial misconduct in opening statements and closing arguments. Second, that the trial court erred in bringing the jury into the courtroom to watch a squad card video of the incident. In this case, in the presence of the parties, the judge and a court reporter. And third, that this court, if it doesn't remand for a new trial, should remand for a proper crankle inquiry. I'd like to focus on the two trial errors in this case, which were very serious. I'd like to go ahead and go straight to the second issue. In this case, my client was charged with unlawful possession of a weapon by a felon and convicted of that offense after a jury trial. After the jury had been deliberating for almost an hour, the jury sent a question that said, can we see the video from Officer Bay's squad car with the sound audio? The parties did not object to the video being shown to the jury, and the court, at that point, in response, had decided to bring the jurors into the courtroom to watch the video. In the presence of the judge, the defense counsel, the prosecutor, the defendant, and a court reporter. The judge's response, they decided that the video would be played through twice to completion without pausing it or stopping it. Why would the court reporter be brought into the courtroom? The court reporter was apparently already in the courtroom and was recording the proceedings that occurred before and after the jury question and apparently during the juror deliberations. And we know that because the court reporter reported a particular comment that the judge made that in this case compounded the error that occurred. The procedure in this case was error, and there are multiple problems with what occurred here. Video evidence has become crucial nowadays to trials. And we've got body cam videos, we've got squad cam videos. They're often the most probative piece of evidence in a case, and they're essential to determining a defendant's guilt or innocence in many cases, this one included. It's essential that the jury be allowed to deliberate in privacy and secrecy while they're allowed to pause it and replay it and review portions of the video just like they would a piece of documentary evidence that was sent back to them. Do they have an absolute right to have that video replayed? It could depend on the circumstances and what's in the video. In this case, the trial judge determined implicitly that what was in the video would be probative and non-duly prejudicial. There are cases where if it does not meet that standard, the jury might not have an absolute right to review it. But in cases where the video is an important piece of evidence, as in this case, it was an abuse of the judge's discretion to... Well, if it's properly admitted evidence at trial, why cannot the jury review that evidence? I'm sorry? If it's properly admitted evidence presented at trial, obviously presented to whom? That's a jury in a jury trial. Why can't they not revisit the evidence that's properly admitted? Yes. So what's this probative versus prejudicial language? Right. Well, I think there could be certain cases where there might be reason to... And video is not normally a piece of evidence that would fall into that category, generally. I was going to think of any. Certain things... If it's admitted in trial. Particular kind of photograph or something that would be unduly prejudicial. But I agree, you're right, that generally the jury has the right to review the evidence, just as a judge would in a bench trial. But now the question is, is whether... Does the jury have an absolute right to revisit properly admitted evidence during its deliberations? I think it's useful to consider the right that the judge has to do so in a bench trial, because we cannot have a situation in Illinois where defendants feel that they must waive their right to a jury trial in order to have a trial reference who has the power to review a video that they specifically wish to review to make a determination as to a client's innocence or guilt. And the jury's ability to do that was limited here. If it was a bench trial, the judge would often... I mean, you see many times in bench trials that judges will, at the end of the conclusion of evidence, say, I would like to take the case under advisement and go review the video. So you're saying they should have an absolute right. There's no discretion in a judge granting a request to review evidence that is properly admitted. I'm saying that in this case, it was an abuse of discretion because the judge... So the standard is, the short answer is the judge has the discretion to grant the request of an answer. Is that true? Well, there is generally an abuse of discretion standard towards the question of whether a jury is allowed to review evidence. Well, if your standard is abuse of discretion, then it's discretion. There is also the principle here of juror privacy and secrecy during deliberations. I mean, I don't think the judge has the discretion to violate that. The judge, wherever the limits of the judge's discretion are, the judge cannot violate this principle that's been articulated in the U.S. Supreme Court and other decisions of this court that have looked at that and adopted the standard of Alano. If the judge is doing something that's violating the cardinal principle of jury deliberations, that they remain private and secret, that's an abuse of discretion. What do you think went wrong here when the jury came into the courtroom to view the tape as requested? So one specific thing that was a problem was the judge's comment. After they had played the video once through, the prosecutor asked, was that loud enough? And the judge responded, well, you know how it is. They talk over one another, but whatever you can make of that is available for you. What's the prosecutor asking? What does that question mean, was that loud enough? To whom is that question directed? It appeared to be directed toward the jury. And if you look at the judge's response, that appears to be directed to the jury as well. The judge says, but whatever you can make of it is available for you, is the last part of that. So he seems to be saying that to the jury. Well, you know how it is. They talk over one another, but whatever you can make of that is available to you. So he wasn't talking to the prosecutor at that point. He was talking to the jury. And this is essentially telling the jury, even though the jury specifically asked to hear the audio in this case, that, well, they're talking over one another. You're not really going to be able to parse that out, so don't bother. It was dismissive of the possibility that the jury could glean something from this video. When the video was first published to the jury, was the audio published as well during the trial? Yes. So they had both video and audio? Yes. Well, one problem here is that, as with so many videos, you have to carefully watch it and listen to it in the sequence that's occurring. Significant things in this case happen within a second or two. There's no way that you can glean what you need to from the video without being able to control it and pause it or replay it. And here, the prosecutor was given the control of the video and just played it through twice according to the judge's orders during the deliberation phase. The audio was apparently played at that time. However, that process of just going straight through it twice limited the jury's ability to stop and rewind and carefully examine a certain segment in the video. And compare interpretations of individual jurors as to that exhibit. Absolutely. Because it is an exhibit, is it not? Absolutely. Okay. Now, you're not taking the position to have an absolute right, but it is discretion on the part of the court to determine whether or not that exhibit goes to the jury after deliberations have been done. Is that kind of the general principle? I suppose the judge generally has discretion, but in this case it was an abuse of discretion. Was it an abuse of discretion to allow the jury to view this? No. Where does your abuse of discretion go to the law? The abuse of discretion was the procedure that was followed. Okay. So if all of this, because there are cases kind of all over the board here, even in our court of dissent, that if I were to teach new judges school, I would say, well, you'll never get reversed on an abuse of discretion by saying no to the jury. Saying no to the jury on a request. A request to see the audio. Yes. I mean, is there any case law that was an abuse of discretion to say no to the jury? Well, in this case also. Not in this case. Back to my general advice to the court, the lower court. I'm not sure if there are cases. Okay. Be interested. You're right. Okay. So, but yes, in this case it was. I would also point out that I've argued, and I think it's correct, that the judge didn't actually properly exercise his discretion in this particular case because the judge employed this procedure, which has been criticized by this court. In other trials in other counties. Yes. Yes. And it was criticized in the Rouse decision in 2014 as well, even though that court said there was no conditional impact. It also suggested, it found on the procedure and said that the proper way to do it would be to send it back to the jury with a laptop, let the jury control the playback of the video. That's the way to do it. So doing it in the way the judge did it here without there being any specific reason for it. In other cases there have been reasons that the judge articulated for doing it this way. They could not play the video in the jury room or something, which that particular reason I don't think is strong. However, in this case, the judge didn't offer any reasons for following this procedure that intruded on the privacy and secrecy of jury deliberations and inhibited their review of the evidence, and additionally resulted in this prejudicial impact because the judge made this comment that was dismissive of the jury's ability to glean something from the video. I mean, that's precisely why this procedure is potentially dangerous. Well, what's wrong with that comment? I'm struggling with that comment. Make of it what you will, right? Well, that's the second part of it. The first part of it, after the prosecutor said, was that loud enough, the judge said, well, you know how it is. They talk over one another, but whatever you can make of it is available for you. That was dismissive. It's sort of suggesting, well, on the video there are people saying stuff at the same time, and you're not going to be able to sort that out, so don't bother. Even though the jury had asked to get an argument. That's their interpretation of that statement. Correct. That's how the jury could have taken that statement. Certainly. And by an authority, a figure like the judge, that's why you don't want to have a judge in jury deliberations. I mean, let them review the video in privacy and secrecy so that nobody says something that's going to make them think this piece of evidence is less valuable than we thought maybe it was. Well, what about the prosecutor's comment? I'm trying to figure that one out. Why is that prejudicial? Oh, I didn't say the prosecutor's comment. Oh, okay, it isn't. The judge. The judge's response to it. I just mentioned the prosecutor's comment. You're saying the prosecutor asking that question, which you just said is directed at the jury, is not an improper intrusion on the deliberations. Well, the whole process is an improper intrusion on the jury deliberations. The mere presence of these people is going to inhibit the jury's ability to talk about the situation. That particular comment is just saying it's not necessarily the comment that discourages the jury from viewing the evidence a certain way, but the prosecutor's presence and the presence of the parties certainly will shield jury deliberations. So simply put, all we're asking here is that the jury essentially be able to review video evidence in this situation when there's no reason not to do it and the video evidence is crucial to the case, in the privacy and secrecy of the jury room, with the ability to stop the video and pause it and rewind and carefully examine the video, just like a judge could do in a bench trial and just like this court would most likely do if it had a video that was important to an appeal. I would say that's two minutes. This court could find the second front in plain error, but it could also find that this was a closely balanced case and reverse for that reason. This case was similar to People v. Love. In this case and in Love, there were four defendants in a car. One of the defendants in Love reached down towards the contraband that was inside the car. Two officers observed him doing that. The court said that the evidence was far from overwhelming in that case. This case was similar. The defendant was in a car with four other people. One officer testified that he laid back across the seat and reached toward the area where the gun was under the car. However, the video, and this is where the video evidence becomes crucial, suggests that the officer was not in a position to see that, that the officer was backed by a squad car and had a similar angle as squad car video where you cannot see the defendant reach under the driver's seat. The video also suggested that laying back across the seat, the jury could have interpreted that as an attempt to comply with the officer's orders. If you looked carefully at a couple seconds there, you could see that the officers yelled, lay down and get down, while the defendant was sort of at one foot out of the car and was still in the car, and then he laid back when that occurred. He reacted to that at the same time as another person who was getting out of the back seat of the car ahead of him, but that person has already settled steps out and laid down on the ground. My client could only have gone forward and laid down, which could have been interpreted as an aggressive act or laid backward across the seat. So the video could have shed light on those questions. And in light of that, all you have left is there's a gun in the car under the driver's seat and my client is sitting behind the driver's seat. But that is not going to be enough to make the case not closely balanced because there's no evidence as to how the gun got there. No one ever saw my client touch the gun. There's no fingerprint evidence connecting to the gun. There's no DNA that connects the gun to any specific person. And so the gun could have been placed there by the driver who bailed out of the car as soon as the car was stopped. He put the car in reverse and ran away and got away from police. It's very likely that that was the driver's and it was sitting there and my client never had... I'm just going to ask this question. The gun was in the back of the driver's seat, correct? Yes. What was the location of the driver's seat? It was partially protruding out on the floor, partially protruding out from under the driver's seat. That means in the area, the floorboard area between the back seat and the back of the driver's seat, right? Correct. And there was evidence, was there not, that there's no clear place you can slide a gun from the front seat cushion back to that area? Correct. But we don't know how long my client was in the car and the gun could have been there from the driver leaving it there the whole time. Why are you trying to pin it on the driver? Just because it's found in the back of the driver's seat? Well, the driver is more... How many people are in the back seat? Two. Okay. And yet there's undisputed evidence, is there not, that you can't slide anything from the front of the driver's seat to the back of the driver's seat. Am I misstating what the evidence was? It's correct that it couldn't be slid necessarily under the seat, but it could have been passed. There's no evidence to suggest that the driver did anything except exit from the driver's seat and run. That's correct, but if the driver's gun was in the car before my client got in the car... Well, okay, but as I said, why are you pinning it on the driver? Right, it could have been... How many people are in the car? Absolutely, there's three other people in the car, so how many of those people could have tossed the gun to my... When the police were stopping the car, in a psychiatric situation, it's dark, if one of them had a gun at that point and wanted to get rid of it, they could have tossed it back in the driver's seat. And at that point, possession is a voluntary act. It requires that you have possession for long enough to be able to get rid of it. You're not guilty of possession if someone tosses something to you and you just quickly try and get rid of it by putting it under the driver's seat. At that point, you can take possession of something for long enough to terminate it, and that's not illegal possession of contraband. So if that's what occurred, you also wouldn't be guilty. And we're just talking about is it close and balanced. These are certainly alternative views of the evidence that the jury could have accepted and may have, if they had the opportunity to carefully review the squad car video. Time is up. Okay. You'll have time to applaud. Okay. Thank you, Your Honor. Good afternoon, Your Honor. May it please the Court. Household. On behalf of the people, we will... Confine my remarks to the second issue, unless this Court has any questions about the other two issues. Obviously, based upon McKinley opinion and the concurring opinions and the dissenting opinions, there is some awareness of where matters stand. The case is a matter of whether the trial judge has the discretion to have this procedure in which the jury comes into the courtroom to watch a video. Now, I'm aware that there are those who believe that that procedure in itself can be error, but not necessarily second-pronged plain error. It is simply first-pronged. It goes to the closeness of the balance of the evidence. Some say it's even second-pronged. Some say it's even second-pronged, depending upon the circumstances of the case. So we have to look, of course, at the circumstances of this case. First, I want to address the first-pronged closeness of the evidence. As this justice pointed out, the gun was behind the driver's seat on the floor. When the defendant exited the vehicle, the evidence showed that he was the passenger who was on this driver's side in the rear, which would have been where the gun was at. So that evidence alone, I think, makes it pretty strong that the defendant had constructive possession of the weapon. The additional evidence offered by Officer Bay that the defendant was reaching into that area confirms the defendant's knowledge of the weapon. Therefore, our position is this is in close balance. Doesn't the video sort of belie the testimony of Officer Bay? Because as you see the video, what you really see is the back or part of the squad car itself because of how it's all situated that where you were at and where the officer was said to be standing, you really couldn't see what this defendant was doing. Well, I would suggest that the video doesn't dispute what Officer Bay says. It doesn't necessarily confirm exactly what he says, but videos are made from a certain angle. And Officer Bay was standing, he testified as to where he was standing when he made the observations. So while the video is considered objective evidence in that anybody can view it, there's still Officer Bay's testimony that as to what he observed in the video, I would suggest, and it's been a while since I've actually watched it, but I suggest does not dispute his testimony. So the combination of the evidence and the testimony and the fact that there's no dispute as to the gun, that it was an actual weapon and all that. So again, this wasn't close enough. Is the evidence sufficient? Let's say I've twisted it just a little bit. The evidence just being that he was seated in the back seat behind the driver's seat. And let's say there was no furtive movements in any way, shape or form. No lying down. This picture I'm getting from the facts that he rolled over towards the floorboard into the direction where the gun was found. Let's say none of that action occurred. Could he be convicted of possession of that firearm? It would be a closer case, but yes, he could be because the inference was that he was in that position. The gun was obvious. The officers, when they shined their flashlights, saw it sticking out from under the seat. And therefore, a reasonable inference is that he would have been aware of the presence of the weapon. Awareness and dominion and control is sufficient to make him guilty of possession of that firearm. How did he get to dominion and control? He'd be sitting right in front of, it's like any other constructive possession. But it's not that specific. It is, of course, that specific. The fact that he was there, the gun was there. The gun was arguably appearing from under the seat, and he was seated in the back seat. And that could lead to an inference of dominion and control. Yes. So it's a proximity issue. Well, yes, proximity is one of the issues. When you're trying to analyze when there's multiple people in a vehicle who possesses the contraband, you look at proximity as one of the factors. Also, whether it's open and obvious, in addition to further movement, which we do have in this case. So now it comes down to whether the procedure falls under the second prong of plain error. And we, of course, disagree that it does. The prosecutor's comments, as counsel concedes, was simply a request, a general request, was this loud enough when they played it. The trial judge made his response about they're talking over each other. Make of that as you will. He's simply telling them, you know, do with the video what you want with the video, which is exactly what the jury is going to have to consider. Do you? They make their inferences or their decisions based on that. The judge then had the video played a second time. So if the judge believed that there's no reason for the jury to bother trying to parse out the audio or video or anything like that, there'd be no need to play it a second time. So I would suggest that his comments were not as dismissive as the defendant suggests. Were the comments responsive to the prosecutor's question to the jury? No, there was no objection. There was no comment. The judge just volunteered his observation. Correct, in response to what the prosecutor said, because the prosecutor was making sure that presumably that it was loud enough that everyone in the courtroom could hear, not just. And it wasn't. Obviously, from the from the bare record, you can't tell where the prosecutor was looking at or directing the question to. But the judge is the one that responded. So it simply could be that she was asking the judge. Why is the judge responding? If I think the question taken by the prosecutor, I mean, just was it loud enough? The opposing counsel says that was directed toward the jury, correct? I think at least it seems reasonable that the prosecutor is asking, is it loud enough for people to hear? OK? General question. Generally, I think that will likely be directed towards the jury. Well, he asserted that it was a problem, so. I agree, but I'm trying to figure out why the judge is answering the question directed towards the jury. Well, exactly. I see your point, Robert. Yes, he's responding to the prosecutor's comment. And so in the second viewing, did the judge instruct that the volume be turned up? Do we have any record of that? No, there's no. Therefore, the indication is that the volume is just fine. How much was this process discussed before the jury came into the courtroom? How much did the trial court discuss the details? I don't think there was much of any discussion. The note came back from the jury. They said we'll play it again a couple of times, one or two times. I think there was no it's really no objection to that. And then the procedure was played out. I don't think there was the judge didn't say, OK, I'm going to have a problem with me bringing the jury in. Because, of course, back in 15 or so, there weren't as many cases addressing this particular point. So it was probably just something that always happened. And now it's it's an issue. I mean, it's whether the jury can hear it in the courtroom. We've had an argument a few weeks ago about whether the jury could hear it on a laptop in the in the jury room. I don't know whether the jury is allowed to listen to anything anymore, actually. But that's besides the point. Fairly clear, isn't it? In the jury room. When they've begun their deliberation. Well, as you pointed out, there's discretion by the trial judge or asked anyway, discretion of trial judge, whether it allows the jury to review that. Yeah, to view it. To view it at all. I mean, the state of law presently is decision law. Is that that's a discretionary call? What problem? Correct. So he could simply say, no, no, no, no. Right. Well, that would be the advice they give him. But the question goes further. Can't how? How can the judge frame the context within which they're allowed to view? I mean, in other words, what restrictions? After they've begun their deliberations. And the cases that we've cited so far, McKinley aside because there's multiple opinions to it. But Johnson, Rouse. Pardon me. In particular, say that McKinley and McKinley McKinley majority. There was questions about Justice O'Brien's concurrence suggested that it was a problematic. Always Johnson and Rouse suggested that it goes to the discretion of the trial judge and was not automatically a problem. So and certainly I think the key here is in all these cases was defendant prejudiced by these by this procedure. Even if you want to accept that it's problematic. And our position is that even if the jury had viewed this in the privacy of the jury room, wouldn't have changed the result. The jury viewed this and within half an hour had come back with a comeback in the jury room from the jury room. And in the cases, Rouse, Johnson talked about that. There's no indication that the jury has to see this video again. No problem with the jury had with viewing this video. So our position is that there's simply nothing here to. I guess I have a question. Because this is part of jury deliberations. And I know that no one else is supposed to be participating. But we have for whatever reason now we have the state. Everybody's in this room. But participating in the showing of this video is the state and the judge. And it seems to be a lot of interplay between them. And when the state says, is this loud enough? And the judge responds, well, you know how it is. They talk over one another. But whatever you can make of it is available for you. Okay, we'll play it one more time. And then the judge says, you've completed two showings with this audio. We'll have you return to the jury room and we have your lunch. And we'll see you when you get back. There doesn't seem to have been any opportunity for the foreman or someone else as a representative of that jury to say, we'd like to see this a third time. Or we'd like to play this. Or we want to play only from here to here. We want to slow it down. I mean, that doesn't seem to have been contemplated or allowed in any fashion. And is it proper for once this portion of this tape has been admitted, it's evidence, the judge then says, you can view it, jurors. Is it then appropriate for the judge and the state, with the obvious acquiescence of defense counsel in this case, to determine how they view that? It's within the discretion of the trial judge to allow the procedure that's opposition. And certainly, as the Johnson court particularly pointed out, the jury never asked again to view the video. The jury knew that it could ask questions. Because it sent out a question to ask the video. If they wanted to see it again, there's nothing prohibiting the judge from saying, OK, you can't. Don't ask any more questions. So if the jury wanted to see it again, there was nothing stopping them from doing so. Here's our problem. There's nothing magical about a video. A video is the same thing as a picture of a crime scene. And if it's properly admitted in trial, then it's proper for a jury to ask to see those pictures again. Now, I don't know. Maybe there is some fact pattern where the judge says, grants the request, but has the jury all pile into the jury room or into the court room and has a bailiff pull out an envelope and put those pictures and just go down the row and say, take a look at this, take a look at this, take a look at this, and then pick them up and put them back in the envelope. Normally, those pictures are sent back to a jury. They rest on a table in the jury room. We assume. We assume. Well, we know nobody's directing them how to look at it or how often they can look at it. But here we have a situation. Let's really be sensible and common sense about this. Why did they ask to see the tape again? Clearly, because somebody says, I'd like to look at that tape. I think I saw this. And somebody says, no, I didn't see that. And so they're trying to resolve probably a question through a give-and-take discussion in a jury room that's supposed to be sequestered. Now, if they were only allowed to see it once or twice, as in this instance, I would say anybody present in that court room can't hear the follow-up questions or shouldn't be allowed to by one person. See, I told you. That's what I'm talking about. And the other person would say, no, that isn't what you're really seeing. And the answer would be, let's play it again. Well, following up with Justice Holdridge's question, and before you respond, I'm just reading between the lines, but the jury asked for the video with the audio. So that tells me they wanted to listen again. They wanted to listen. And the judge making this spontaneous comment about, you know, I interpret it as if you listen, it's not going to help you because people are talking over each other. To me, that's a little problematic. The other issue I have is with the defendant in the room, you don't know what jurors are looking at. Jurors read everyone in the court room. And when they're sequestered and go back to deliberate, there is no more input. The doors remain closed and the bailiff swears that he's not going to allow anybody to speak to them. When you march them all back into the room with the defendant present, to draw on Justice Holdridge's example, it's like having the defendant walk into the jury room and spread the photos out on the table. The jurors just really shouldn't see the defendant again. Until their deliberations are complete. That's where I have the trouble. Hard to respond, I know. Well, I guess the response is that these other cases have already addressed that procedure and have either found it appropriate as part of the judge's discretion or that it wasn't problematic because the defendant didn't show prejudice. But the other cases don't have the judge making a spontaneous statement. The judge did not address the jury about the exhibit. Well, McKinley does have, as Justice Holdridge pointed out, which was part of the two-fold problem of the judge's comment about didn't specifically instruct the jury that they could talk about the video afterwards when they got back to the jury room. And that wasn't a problem for the majority of the court. So I would suggest that even comments made by the judge are not inherently problematic. I appreciate your answer. Well, yeah, that is a different type of comment I was articulating in McKinley than this comment here. But it's still, I mean, responding to Justice Wright's comment, sorry, that whatever a judge makes a comment, it's problematic, is what I mean. And in this case, wasn't defense counsel telling whoever was running the video when to stop? And I know that juries can read the wackiest things into events. And maybe somebody went back and said, well, the defense attorney didn't want us to see the next part. Yeah. You know, it's not a matter of... I certainly don't want this court to make a blanket rule that you can never do this procedure. And... Why? Because it's not... It's within the discretion... You know, there's always twists and turns in a case. And if the judge... What if these are horrific autopsy videos or autopsy pictures? Well, it's always been within the discretion of the judge as to whether it was viewable, as to whether it was viewed, to allow the viewing. Right. But your suggestion about you can never... They always have to go back to the jury room. Well, if they have a terrible autopsy picture, and the defendant says, hey, I never wanted these, go back to the jury room, and you've got... You would bring the jury up and allow them to look at them, but they don't want them sitting in the jury room and gawking over them. Now, there's some discretion there in allowing them to... At least that's what our position is. I'll stay on the brief on the other two issues, if there's no comment. What about the critical hearing issue? The critical hearing issue is a... There's two points about that. First, our position is that the judge made an inquiry of the defendant about what his problems were with the defense counsel. First being that he should file a motion to suppress, which we pointed out, that's a trial strategy issue. Therefore, that's generally not something that can be the basis of appointing new counsel. The other being that he wasn't advised about the constructive possession versus actual possession,  if he had known he could be convicted of constructive possession. Which brings me to a point that if his indication is that he's pleading guilty, or would have pled guilty, the defendant's already served out his sentence and his complete MSR, so I'm not sure why the defendant's continuing to... That's not the case. That's the defendant's right to do that. But the... The defendant was advised during the jury instruction conference about the difference between constructive possession and the defense counsel made arguments about constructive possession. The defense counsel even suggested that there was no constructive possession. Therefore, on the record, that's clearly rebutting what the defendant's understanding may have been. And that's actually the trial, isn't it? Well, it's... I mean, it's during the trial. Well, during the trial. True. But nothing's stopping the defendant from going, oh, wait, I'll plead guilty now. Yeah, well, reality is, what's the... How much bargaining power do you have at that point with the state? Well... Zero. Besides, it happens, though. Defendants have stopped trials in the middle and gone to... And plead guilty, so... The other point was the state's input. The trial judge made his inquiry of the defense counsel and then said, okay, we're going to move on to the motion for a new trial. And it was during that that the state made its rebuttal. It wasn't during the initial critical inquiry, which is what is problematic, according to the Supreme Court. What is sufficient for a critical inquiry? Inquiry of the defendants as to whether or not... What his issues are, and the judge can determine whether or not those issues have any merit worthy of appointing the counsel. He can then, if he thinks that there is some question, he can ask the defense counsel what exactly was going on and then decide whether to make a... I admit that the procedure here was a little unusual, and the judge did not come out and say, okay, I'm going to deny your problems with your counsel. And it seemed like a seamless web into another hearing, correct? To some extent. But I don't think it's problematic, given the fact that there is no merit to anything that he was complaining about. But the constructive possession argument, that wasn't included in the motion for a trial, so... But the judge allowed the defense counsel to argue. He argued it on behalf of the claim for ineffective assistance? I'm sorry, no. Just the argument regarding constructive possession. Okay, because... I know the judge makes a finding that most of Evans' claims of ineffective assistance had been included, or claims that were included in the motion for a new trial, but that one wasn't. And that, but the state addresses it. And... So I guess I'm... Because of the way, the manner in which it happened, the state argued in response to the motion for a new trial, but that part had been brought pro se and was not included in the motion for a new trial. Although some of his other claims that he made pro se were already included. So it seems like that part should not have been addressed by the state, but it was because they just addressed everything at the end. So I guess it seems like that part violates what the Supreme Court has said is permissible. As I say, it was an unusual procedure for the trial judge to follow, but it's, again, it's meritless. I'm not sure it necessarily matters. Another point, just briefly, the defense defendant in his reply brief had asked that it be sent back to a new judge for a Krangel hearing. We do not believe that it would be appropriate if this court is going to send it back. The same judge should hear it because he heard the trial and part of the analysis of Krangel is whether, what his observations of defense counsel, and so we don't think that that would be appropriate. So this argument is that I was never properly advised, counseled by my attorney, that I could be convicted of unconstructive possession. Is that really what he's trying to articulate? Yes. And what does that have to do about the trial judge having to hear that? Well, it also goes to his other, well, assuming they're going to then address the other problems that the defense defendant had about the motion to suppress that would tie into the defense strategy. Why does it have to be the same judge? Well, it's the judge who heard the case. It's appropriate to send it back to the same judge. It's unusual and should only be done in extraordinary circumstances to send it back to a different judge. I don't see why this judge should not be allowed to say it. Okay. Thank you. Thank you, counsel. Counsel, you may reply. Do you want to address that last issue first? Absolutely. So in terms of, just to start with the last comment that was made about it being readmitted before a different judge, that seems to be the established case law when there's adversarial state participation in a crankle inquiry that it's readmitted before a different judge, and I believe that's because the judge heard the improper participation by the state and it goes to a different judge who has not heard the improper argument by the state. So that's the reasoning for it, and it's clearly established, I think, in the case law that that is the appropriate remedy. In terms of the merits of the crankle issue, it is, I think, just sublime at that point, pretty well, that what happened here was that there was this claim that was made in the crankle inquiry that the judge did not address, and then because the judge commingled the crankle inquiry with the hearing on a motion for a new trial, that resulted in this improper argument by the state. So this procedure is what resulted in this error, and it wasn't proper for the state to comment on this crankle issue that had not been resolved yet, and it was not part of defense counsel's motion because defense counsel didn't allege her own ineffectiveness. Going back to the issue of the video, the state suggests that some of the established case law has said that it's not error to do this, but I think the most accurate interpretation of this court's precedent so far is that it is error to follow this procedure, but it's reviewed for prejudicial impact, is what the majority has said in a couple of cases, and they've said that there was no prejudice in those cases. So that's different than saying that it's not error. It is error. The question is really of prejudice, and this case is unique, as it was mentioned, I think, by Justice Breyer and Justice O'Brien, that we have this comment from the judge. We have comments by defense counsel and the prosecutor, and the comment by the judge in McKinley, as you pointed out correctly, Judge Holdridge, was different because in that case it was really more of an instruction. The judge was attempting to give instruction for the jury to remain quiet during the deliberation. The judge made a mistake by making an instruction that the jury could have thought inhibited their ability to discuss the video when they went back later on. In this case, there was no instruction, and that is something that Judge Holdridge pointed out. It should be required in this situation, is to give a specific instruction to the jury. The judge did not give any specific instruction to the jury  In fact, people were not silent during the video. Several comments were made, as Justice Sreb pointed out, and one of them was prejudicial because it was dismissive of the ability, dismissive of the possibility that the jurors could gain something important from the audio here. Going to whether the case is closely balanced, the State had argued that the video is not inconsistent with the officer's testimony, Officer Bayes' testimony. However, Officer Bayes testified that he had already come around the car and was basically looking straight into the passenger compartment of the vehicle, like the other officer, and had my client at gunpoint at that time. The video clearly shows that he was not in that position. So it's inconsistent.  When he testified, I got the impression that he was at the front corner driver's side of the slide car. Do you correct me if I'm wrong? No, that's correct. Yes. Well, his testimony wasn't exactly that, though. There was, the first thing that he testified to was that he had already, at the time that the defendant laid back in the car, that was when he reached out to search. That was the whole reasonable inference action that he was attempting to come into contact with, either to possess or to escape from a weapon. Right, so the officer testified, but the officer testified that by the time he saw that, he had already made his way around the vehicle. And that's, I think, on page 21 of volume 6 is where we see that initial testimony by the officer that I had made my way around the vehicle and headed into gunpoint at that point, and that's when he, I saw him looking into the pit. It's implied in that testimony that he was around the car, had the defendant at gunpoint, that he was looking straight into the passenger compartment, and that's how he could see him reaching under the vehicle. The video and possibly another portion of the officer's testimony could be interpreted that he was back by the front part of the slide car, as you said. Now, the video shows that he would not be able to see it from there. It's common sense that he would not be able to see it under the driver's seat from that position because the car was behind, the squad car was behind and to the left of the vehicle, and it would be impossible to see someone reach under the driver's seat from that position. He was positioned in the front corner of the suspect's vehicle, right? Or from where? So the front corner of the squad car was sort of near the back corner of the vehicle, and the vehicle rolled backwards, so the squad car sort of pulled next to the vehicle, and you see in the video, the vehicle rolls completely backwards past the squad car, not hitting the squad car, and so the officer was standing by the front seat area of the squad car. He had just gotten out of the driver's seat of the squad car, and we can see him at a certain point run across before the car gets completely past the squad car to get to the other side. But the video also shows that it was before that when the defendant laid back in the seat. So the officer did not have a view under the driver's seat at that point. So again, this is one of the crucial things that could have been taken from the video. The audio would have suggested that the defendant was attempting to comply with the officer's commands by lying back, and the state was incorrect to the extent that it suggested that mere proximity is enough to prove someone guilty of downed reason or not. The case law is clear that even proximity and knowledge of the contraband in the location where it's at is not enough to even prove the defendant guilty of downed reason or not. And here we're talking about was the case closely balanced, if we even get to that, potentially at the second point. What do you have to have besides knowledge and proximity? You have to have the intent to exercise control of the contraband, and it has to be knowing and voluntary possession. So just being, you can be near something that just happens to be there. You walk in, you sit down in the car. We don't know how long he was in the car, and that's already there. It's not his. He doesn't have any intent to actually exercise control over it because it belongs to someone else. He just happens to be in the car. Well, obviously the key pin on intent was the furtive action taken, maybe furtive isn't the correct word, but the action taken of lying down and being somewhat positioned close to the gun. Yes. Rarely does someone say, oh, yeah, I intended to have that gun. Sure. Just surrounding circumstances. I think it's correct that the case relies entirely on the reason why Evans laid back. I mean, that's a crucial point, but if the video would have suggested that it was an attempt to comply, the jury could have looked at that, and they could have easily concluded that what was happening here was both of these men were getting out of the car. One man was a little bit ahead of my client at that time. Both of them reacted to the officers yelling, lay down, get down. The guy who was already out of the car, he got down on the ground, but my client couldn't do that. He would have to move forward towards the officers at that point. That's not probably a good idea when they're yelling lay down and get down. So the jury could have certainly interpreted that laying back on the seat to be an attempt to comply with the officer's commands. And if Officer Bay's credibility is impeached by the video, then all you've got left is, okay, why did he lay back down in that seat? And that can go either way. So for all those reasons, I would ask that this Court reverse the conviction and remand for a new trial on either Issue 1 or Issue 2, or in the alternative, remand for further criminal inquiry. I'd be happy to answer any questions this Court has at this point. Well, I have just one question. Let's assume the video was never, and the Court exercised its discretion, which I think we've hammered out now it has, as to whether or not the jury is going to view this video, that it's been properly admitted into trial. Let's assume that the Court exercised its discretion and said, No. How would you attack the verdict then? Well, I would briefly point out that I don't believe the Court exercised discretion here. No, no, no. That issue's off the table. You've got the facts that you have a conviction. How would you attack that conviction? So if the judge decided the jury cannot view the video. Well, I think it could be an abuse of discretion to not allow the jury. You're not going to go very far in case law with that argument. It is contrary to what this Court has said, well, the procedure in any event. Well, that's off the table. You've got a conviction. You've got a conviction. Don't. Stay with that pattern. Used and did not abuse his discretion and said no to the jury. Collective, remember what you saw at trial. I think it's still arguable that when you've got an essential piece of evidence that needs to be carefully reviewed. I mean, it could be comparable, as I think you said previously, Justice Holder, to a document that is essential to the case. If you've got a case where someone is accused of fraudulently making a document, the jurors may have to carefully examine it. You can't just. . . We don't have any of that here. Well, it would be as if. . . Okay. Look at the document. You're not going to accept my hypothetical. That's all right. We've gone on long enough. Think about it, though. Okay. Thank you, counsel, both, for your arguments in this matter. It's an interesting case. It will be taken in advisement and a written disposition shall issue. Thank you.